■  LENKAY SANI PRODUCTS CORP., Respondent, v. RAMON BENITEZ, Appellant.— In an action to recover damages for breach of contract, defendant appeals from a judgment of the Supreme Court, Kings County, entered

December 21, 1972, in favor of plaintiff, after a nonjury trial. Judgment reversed, on the law, and new trial granted before a Justice other than the one who conducted the trial under review, with costs to abide the event. The court has considered the questions of fact and has determined that it would not grant a new trial upon those questions. Under the contract between the parties, defendant was to manufacture certain machines to plaintiff's order. After the machines were delivered, plaintiff used them on its assembly line and found that they jammed and missed in their operation. Defendant sent his employees to plaintiff's plant to correct the problems. Thereafter, plaintiff brought this action to recover the moneys it had paid and defendant counterclaimed for the balance of the purchase price. The record at bar presents serious questions of fact, as to whether plaintiff ever effected an "acceptance" of the machines, as that term is defined in section 2-606 of the Uniform Commercial Code and, if there was an acceptance, as to the circumstances surrounding it. Acceptance by a buyer generally precludes rescission of the contract by him and recovery of the moneys paid on account (Uniform Commercial Code, § 2-607, subd. [1]). Where a buyer has knowledge that goods do not conform to the contract specifications, but nevertheless accepts them, he may revoke his acceptance and rescind the contract if the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured, but cure was not effected (Uniform Commercial Code, § 2-608, subd. [1], par. [a]). Here, plaintiff claimed at the trial that it had retained and used the machines in its business only upon defendant's assurance that he would correct any problems in connection with the machines. On the other hand, defendant claimed that plaintiff accepted the machines unconditionally. Despite the conflicting testimony, the trial court made no specific finding of fact on these issues and failed to consider the application of the foregoing statutory rules. This was error and a new trial is therefore required. On the retrial, the court should consider the defense that the machines only malfunctioned because they were used with plastic stirrers other than those of the type which were supplied to defendant by plaintiff for the purpose of designing the machines. The contract does not define the term "plastic stirrers" and, accordingly, defendant was entitled to introduce parol evidence to show that that term, as contemplated by the parties, meant stirrers of the same size, shape and quality as those of the samples (Uniform Commercial Code, § 2-202). If the court finds defendant's contention in this regard to be supported by the proof, the court should thereupon determine whether the stirrers used by plaintiff in its operation materially varied from the samples and whether the variation caused the malfunction in the machines. Finally, the trial court should consider the defense raised by defendant that plaintiff breached the provisions of paragraphs four and five of the contract, which grant him the right to install the machines on plaintiff's assembly line, and thereby frustrated his attempts to see that the machines operated to plaintiff's satisfaction. Gulotta, P. J., Hopkins and Christ, JJ., concur; Shapiro and Munder, JJ., concur in reversing the judgment, but otherwise dissent and vote to dismiss the complaint and grant judgment to defendant on his counterclaim to the extent indicated herein. On this appeal, this court, upon the evidence and record before us, should render final judgment for defendant without the necessity of a new trial (see *Society of N. Y. Hosp.* v. *Burstein,* 22 A D 2d 768; 11 Carmody-Wait 2d, N. Y. Practice, § 72:169). The record indicates that plaintiff agreed to buy and defendant agreed to manufacture and sell six feeding machines at a price of $3,250 per machine, plus 3% sales tax. The parties agreed that, if the first machine did not operate to plaintiff's satisfaction, defendant would remove it and return all deposits. They further

agreed that, if the first machine met with plaintiff's approval, defendant would "then proceed to manufacture the other five machines." Plaintiff gave a $1,100 deposit. Pursuant to this agreement, the first machine was delivered to plaintiff on April 4, 1968. Thereafter, orders for the second and third machines were placed and on September 10, 1968 delivery of these two machines was accepted and $5,985 was paid by plaintiff to defendant. It is incredible that plaintiff would order these two machines, accept delivery and pay that amount if, as now claimed, the first machine was not operating properly. Further, an additional $5,000 was paid by plaintiff on November 7, 1968, after the fourth and fifth machines were delivered. In short, we disagree with the majority's conclusion that there is a serious fact question whether there was an "acceptance" by plaintiff of the machines within the meaning of section 2-606 of the Uniform Commercial Code. Plaintiff's conduct and the agreement establish there was acceptance. Defendant should have been granted judgment in the amount of $4,652.50. This amount is the difference between the price of five machines plus tax ($16,737.50) and the total amount paid by plaintiff ($12,085.00). The sixth machine contemplated by the parties in their agreement was originally sent to plaintiff but returned to defendant in a damaged condition. This item is apparently still in defendant's possession and hence we would not grant defendant judgment for it.