[640 NYS2d 270]

In the Matter of BIG TREE ENERGY PARTNERS, Respondent, v
PETER BRADFORD et al., Constituting the Public Service
Commission of the State of New York, et al., Appellants.

Third Department, April 4, 1996

28

---

## APPEARANCES OF COUNSEL

*Maureen O. Helmer,* Albany *(Cheryl L. Callahan* of counsel), for Public Service Commission, appellant.

*Nixon, Hargrave, Devans & Doyle, L. L. P.,* Rochester *(Stanley W. Widger, Jr.* and *Kathleen Kenney Suher* of counsel), for Rochester Gas and Electric Corporation, appellant.

*Iseman, Cunningham, Reister & Hyde, L. L. P.,* Albany *(Brian M. Culnan* of counsel), for respondent.

## OPINION OF THE COURT

MIKOLL, J. P.

This litigation arises out of the parties' dispute over the meaning of the term "system supply commodity price" as used, but not defined, in the contract petitioner and respondent Rochester Gas & Electric Corporation (hereinafter RG&E) entered into on July 1, 1990. Under the contract, petitioner was to supply RG&E with a specified quantity of indigenous gas. The contract defined indigenous gas as "[n]atural gas produced from gas wells located within the State of New York". The sale price of indigenous gas delivered to RG&E up to a specific quantity was to be "equal to RG&E's system supply commodity price". During the life of the contract, the system supply commodity price was based on the commodity rate for commodity gas supplied to RG&E by Consolidated Natural Gas (hereinafter CNG).

In September 1992, however, RG&E informed petitioner by letter that because CNG was no longer the supplier of the bulk of its commodity gas, and as it was purchasing this gas from a number of other suppliers outside New York, the CNG price was no longer considered the "system supply commodity price". This letter further stated that the new price should reflect the lower actual system supply commodity price.

Thereafter, petitioner commenced a proceeding before the Public Service Commission (hereinafter the PSC) requesting that, under Public Service Law § 66-f (2), the system supply commodity price reflect the highest delivered cost to RG&E

from the various commodity gas suppliers. The PSC denied the petition, stating, *inter alia*, that Public Service Law § 66-f (2) does not require RG&E to pay the highest price because the statutory language provides that a gas corporation, such as RG&E, must purchase natural gas from an in-State provider, such as petitioner, at a price which is "equal to or less than the highest delivered cost of natural gas produced outside the state". Finding that "[t]he agreed-upon contractual language calls for [petitioner] to be paid a price equal to RG&E's system supply commodity price, which may or may not consist solely of the cost of CNG gas", and that RG&E's system supply commodity price changed over time due to its new suppliers, the PSC concluded that petitioner was only entitled to the average actual system supply commodity price rather than the highest price RG&E paid.

Petitioner then brought the instant CPLR article 78 proceeding, claiming that the PSC's denial of its petition was arbitrary, capricious and an abuse of discretion and demanding annulment of the PSC's determination plus damages for breach of contract. Respondents denied petitioner's claims and asserted that a breach of contract action is not cognizable in a CPLR article 78 proceeding.

Supreme Court concluded that the PSC's determination was arbitrary and capricious since it did not consider relevant parol evidence in its determination. Although Supreme Court agreed that Public Service Law § 66-f (2) does not require RG&E to purchase indigenous gas at the highest available price, it held that the highest price or CNG price was the proper price after reviewing the extrinsic evidence, annulled the determination and remitted the matter back to the PSC. Supreme Court further ruled that the contractual damage claim was not properly asserted in a CPLR article 78 proceeding, but in the exercise of its discretion converted that part of the proceeding to an action at law. Respondents appeal from that portion of the judgment annulling the PSC's interpretation of the term "system supply commodity price".

The judgment of Supreme Court should be affirmed. The PSC erred in declining to consider extrinsic evidence in determining the meaning of "system supply commodity price" as used in the contract. Supreme Court properly considered extrinsic evidence in defining the term.

Respondents' contention that the term "system supply commodity price" is so commonly used in the industry that it would be improper to consider parol evidence is without merit.

Respondents' assertion that the term is a combination of two widely used terms in the industry (namely, that "system supply" refers to natural gas purchased or owned by a utility to supply the needs of its system and "commodity price" refers to the unit price a company pays for gas), merely substitutes another technical phrase which still requires explanation or supplementation through the use of parol evidence (*see, e.g., Rose Stone & Concrete v County of Broome*, 76 AD2d 998, 999; *see also*, UCC 2-202).

Moreover, the parties differ significantly as to their understanding of whether "system supply commodity price" is to be measured by the CNG price or by an actual weighted average of all RG&E's suppliers. Cases cited by respondents defining "system supply" do not actually define that term (*see, e.g., Oklahoma Natural Gas Co. v Federal Energy Regulatory Commn.*, 28 F3d 1281, 1285; *Tennessee Gas Pipeline Co. v Federal Energy Regulatory Commn.*, 867 F2d 688, 691). A desk book submitted in the PSC's brief, published by Mobil Natural Gas Inc. defining the term, was not before Supreme Court and may not properly be considered on this appeal (*see, Ughetta v Barile*, 210 AD2d 562, 564, *lv denied* 85 NY2d 805; *Campbell v Finke*, 187 AD2d 780). Additionally, respondents' claim that there is a complete integration of the contract under the merger clause does not exclude consideration of evidence explaining the terms such as course of dealing, usage of trade or course of performance (*see*, UCC 2-202 [a]; *Lenkay Sani Prods. Corp. v Benitez*, 47 AD2d 524, 525). Thus, the PSC's failure to look at extrinsic evidence to ascertain the meaning of the contract term demonstrates that the PSC acted arbitrarily and capriciously, thereby abusing its discretion.

Further, petitioner correctly asserts that the PSC acted arbitrarily and capriciously when it stated that its general policy is to avoid interference with contracts, as this statement is contradicted by its prior decisions which did interfere in contracts (*see, e.g., National Fuel Gas Distrib. Corp. v TGX Corp.*, 950 F2d 829; *see also, Matter of New York Tel. Co. v Public Serv. Commn.*, 64 AD2d 232, 246, *lv denied* 46 NY2d 710).

Respondents' assertion that the parol evidence, if found to be properly admissible, does not support the conclusion reached by Supreme Court is rejected. The parol evidence supports the findings of Supreme Court. As Supreme Court correctly noted, there is no evidence supporting RG&E's interpretation of the price term. RG&E admitted in the letter of September 1992 that from the date of the start of the agreement until the

dispute arose, the system supply commodity price was equal to the CNG rate and that CNG no longer acted as a supplier as of November 1991. However, RG&E did not attempt to modify the price until September 1992. Respondents' claim that this 10-month delay in attempting to adjust the price was merely an oversight is conclusory and not supported by any evidence. The course of dealing and the course of performance between the parties to the contract support petitioner's position as to the meaning of the price term. Respondents' other arguments that the price term should be interpreted to be the actual weighted average of all RG&E's suppliers also are not persuasive.

RG&E's argument that assignment of the CNG rate as the "system supply commodity price" contravenes the intent of the Legislature and the public policy of Public Service Law § 66-f is without merit. The purpose of this provision is to "permit indigenous natural gas supplies to compete on a more equal footing with natural gas supplies produced outside of the State" (Exec Dept Mem, 1984 McKinney's Session Laws of NY, at 3337). The purpose of this statute is to benefit the in-State suppliers of natural gas. The fact that the system supply commodity price is interpreted to permit RG&E to purchase natural gas from an in-State supplier at a higher rate than out-of-State rates is not inconsistent with the legislative intent of Public Service Law § 66-f.

MERCURE, CREW III, WHITE and YESAWICH JR., JJ., concur.

Ordered that the judgment is affirmed, with costs.